EVANS et al, Appellants, v. CITY OF BROOKINGS, Respondent.

(170 N. W. 133).

(File No. 4405. Opinion filed Dec. 31, 1918).

**(1). Streets—Alleyway, Dedication, Owner's Intention, Public Acceptance, Necessity Of.**

While there should be evidence of the owner's conduct expressive of a present intention to set apart a portion of his land to public use, acted upon by the public, in a manner clearly justifying inference of an acceptance, and while in an implied common-law dedication there should be an appropriation of land by him to public use by some act or course of conduct from which the law will imply such intent, yet conduct on his part clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner clearly justifying such inference.

**(2). Same—Intention to Dedicate—Declaration Against Dedication, Contrary Acts and Conduct, Effect.**

The rule concerning dedication of land for highway purposes, is that the intent, testified to not to dedicate, will not prevail against the owner's unequivocal acts and conduct in-

15—Vol. 41, S. D.

consistent with such intent, and upon which the public had a right to rely.

(3). Same—Obstruction To—Alleyway, Private or Public?—Reservations for Alley by Respective Owners—Agreement, Improvements to Conform—Common User—Cement Crossing—Evidence, Sufficiency.

Where respective owners of the larger portion of town lots in an alleyless block agreed that each party should leave a strip along the boundary between their lots for an alley, and owners of all lots in the blocks made their improvements to conform to such alley by regarding it as extending through the block, and a twenty foot alleyway was thereafter commonly used for at least ten years by such owners and the public; it appearing that the adjacent owners of said larger part of the block, when building sidewalks across the end of the block, recognized said alleyway by setting out stakes, between which a heavier cement walk was built and paid for by the city with their knowledge; held, that, while there was some testimony inconsistent with the claim of one of the last mentioned owners that the tract was to be used only as a private way, while there was evidence of his present declaration of past intention to the contrary, the evidence as a whole sustantially established a dedication of the alley to public use; and defendant city was justified in removing an obstruction thereto.

Appeal from Circuit Court, Brookings County. HON. CARL G. SHERWOOD, Judge.

Action by Edgar F. Evans, and another, against the City of Brookings, a municipal corporation, to restrain defendant from removing an obstruction to an alleged public alley. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Affirmed.

Hall, Alexander & Purdy, for Appellants.

C. O. Trygstad, and Cheever & Cheever, for Respondent.

(1) To point one of the opinion, Appellants cited:

Roche Investment and Realty Co. v. Highlands Co., 29 S. D. 169, 135 N. W. 684; Sec. 1632 Pol. Code; Investment Co. v. Highlands Co., 29 S. D. 177; Wickre v. Independence Twp., 31 S. D. 623, 141 N. W. 973; Cole v. Minnesota Loan Co., 17 N. D. 409, 117 N. W. 354, 17 Anno. Cas. 304.

Respondent cited:

Roche Investment & Realty Co. v. Highland Co., 29 S. D. 169, 135 N. W. 684.

(2) To point two, Respondent cited:

Larson v. C. M. & St. P. Ry. Co., 19 S. D. 289, 103 N. W. 35; City of Chicago v. C. R. I. & P. Ry. Co. 152 Ill. 561, 38 N. E. 768; Alden Coal Co. v. Challis, 65 N. E. 665.

(3) To point three Appellant, cited:

Ferdinando v. City of Scranton (Penn.) 42 Atl. 692, 13 Cyc. 476.

Respondent cited:

Larson v. C. M. & St. P. Ry. Co., 19 S. D. 289, 103 N. W. 35; Mason v. City of Sioux Falls, 2 S. D. 640, 51 N. W. 770.

WHITING, P. J.   The plaintiff Edgar F. Evans is the owner of the south 200 feet of lots 3 and 4 of a certain block in the city

of Brookings in this state. This block, as originally platted, consisted of four lots, running north and south and numbered from west to east, each lot being 400 feet long and 87½ feet wide. For convenience in explaining the facts of this case, we annex a plat showing the original lots, the redivision of said lots by cross-lines, and the ownership of the several tracts at time of suit:

At about the year 1900 the lots now owned by Evans were owned by one Jenkins. The north 200 feet of the same lots were owned by one Wold, who now owns the north 100 feet thereof. The north 100 feet of lots 1 and 2 were owned by one Korstad. The remainder of lots 1 and 2 were and are now owned by one Caldwell. There was no alley in said block as it was originally platted.

Defendant, contending that the west 10 feet of the Evans property was a public alley, was about to remove a fence which Evans had constructed, and which obstructed such claimed alleyway. This action was brought to restrain the city from removing such obstruction. The cause was tried to the court without a jury. The court entered findings of fact and rendered judgment in favor of defendant. From such judgment, and an order denying a new trial, this appeal was taken.

There are numerous assignments of error, many relating to the receipt and rejection of evidence. The only assignments that have been presented by the arguments, either oral or written, are those which question the sufficiency of the evidence to sustain a finding that the tract in question was a public alley. It is the theory of the defendant that this tract is but a part of a public alley extending north and south through the block, 10 feet on each side of the line between lots 2 and 3; but whether or not the remainder of the strip which the city contends is a public alley is in fact such a public alley is material only as it may throw light upon the question of whether the particular tract in question is a public alley.

[1] The defendant pleaded and now contends that this tract in question was a public alley because of an alleged dedication thereof contained in a deed given by Jenkins to Evans in the year 1908. It is unnecessary for us to determine whether such deed would, in and of itself, constitute a dedication, because we are of the opinion that the evidence was ample to establish a dedication

and acceptance long before the execution of such deed. While "there should be evidence of conduct on the part of the owner clearly expressive of a present intention to set apart a portion of his land to public use, acted upon by the public, in a manner which clearly justifies the inference of an acceptance" (Investment Co. v. Highlands Co., 29 S. D. 177, 135 N. W. 685), and "in an implied common-law dedication it is necessary that there should be an appropriation of land by the owner to public use by some act or course of conduct from which the law will imply such an intent" (Mason v. Sioux Falls, 2 S. D. 640, 51 N. W. 770, .39 Am. St. Rep. 802), yet "conduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to a dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance" (Larson v. Railway Co., 19 S. D. 284, 103 N. W. 35), and what amounts to a dedication by implication depends upon the facts of the particular case, and no hard and fast rule can be laid down as a guide for the courts (Harding v. Jasper, 14 Cal. 642; Baltimore v. Frick, 82 Md. 83; 33 Atl. 435). We are of the opinion that the facts and circumstances disclosed by the evidence in the present case were ample to support the conclusion that this tract was dedicated to public use and accepted for that purpose.

[2] Such dedication was by Jenkins. It is true that Jenkins testified that he never had any intention of dedicating such tract to the public use; but, as held by this court in the case of Larson v. Railway, supra, quoting from City of Chicago v. Chicago, R. I. & P. Ry. Co., 152 Ill. 561, 38 N. E. 768:

"The rule doubtless is that the intent testified to, not to dedicate, will not be permitted to prevail against unequivocal acts and conduct on the part of the owner inconsistent with such intent, and upon which the public had a right to reply."

[3] When Jenkins first purchased what is now the Evans property, the only residence on this block was one at the north end of the Caldwell property and facing to the west. Soon after Jenkins purchased his property, in making plans for his future home, he took up with Caldwell, who was also intending to build on the south part of his lots, the question of reserving an alleyway between their properties; and it was agreed that for that purpose each party should leave a strip along the boundary be-

tween lots 2 and 3. Pursuant to such agreement, Jenkins set out a hedge 10 feet to the east of such boundary line and extending 150 feet north from the south end of the block. It is the contention of the plaintiff, and he offered considerable evidence tending to sustain such contention, that this agreement between Jenkins and Caldwell contemplated the opening of merely a private way. It appears, however, that Korstad erected a residence upon his tract before either Jenkins or Caldwell built the homes they were planning on building, and that he built facing the west, and placed his back fence 10 feet from the back line of his tract. All the residences that were built in this block faced either to the east or west, and whenever barns were erected they were placed at what the owner supposed to be at least 10 feet from this center line of the block. It also appears that Jenkins and Wold also had a talk about the leaving of an alleyway along this center line. This talk was before either built upon his tract. They built their houses the same year. When Wold came to build a barn on his tract, he placed it 10 feet from the center line of the block.

Certainly neither of these people would have any interest in the alleyway along the other party's tract, if such alleyway was to be but a private way. There was ample evidence that, from the time these various owners commenced to build on their respective tracts, a passageway for vehicles was always open along this center line, and was used as other public alleyways were used, and this for some 10 or more years, and until Evans placed in such alleyway the fence which the defendant sought to remove. It is true that there was some evidence, other than Jenkins' testimony, which was consistent with Jenkins' claim that this tract in question was to be used merely as a private way; but there was nothing, except his present declaration of past intention, that was inconsistent with the claim of defendant. We might, however, have some doubt as to whether dedication was sufficiently shown by acts and uses, were it not for what occurred some 2 years after the conversation between Jenkins and Caldwell and the one between Jenkins and Wold, and some 2 years after Jenkins put out his hedge. Jenkins and Caldwell, being about to construct a cement walk along the south side of the block, set out stakes 10 feet on each side of their boundary line, which stakes were to mark the ends of the cement crossing that should be put in across

such 20-foot strip and forming a part of such walk. This cement crossing was built with sloping sides and corrugated surface, and with the extra weight common to public crossings. Jenkins was at that time the mayor of the city, and Caldwell one of its aldermen. This crossing was paid for by the city, and with the knowledge of Jenkins. To our mind this fact, taken with all that had preceded it, constitutes ample proof that at that time Jenkins considered this a public alley; that then, if not before, he dedicated this strip of land as a public highway; and that the city, by the use of this alleyway by its citizens, and by thus paying for the crossing, accepted the same as a public way.

The judgment and order appealed from are affirmed.